UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Kenneth Bailey,                    :
          Plaintiff,               :
                                   :
          v.                       :     File No. 1:07-CV-106
                                   :
Michelle Cogburn, Alicia           :
Cox, Sandy Glenn, M.               :
Brisco, C. Harris,                 :
Corrections Corporation            :
of America,                        :
          Defendants.              :


MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 25 and 27)

*Pro se* plaintiff Kenneth Bailey, a Vermont inmate

formerly incarcerated in Oklahoma, brings this action

claiming that he was denied access to adequate dental care

while housed in the Oklahoma facility.  His complaint names

five individual employees of that facility, as well as the

Tennessee corporation that owns the facility.

The defendants have moved to dismiss on the basis of

improper venue.  Bailey has not responded to the motion, but

has moved to amend his complaint to add two Vermont

defendants.  For the reasons set forth below, the motion to

amend is DENIED, and I recommend that this case be

TRANSFERRED to the United States District Court for the

Western District of Oklahoma.

Factual Background

For purposes of the pending motion to dismiss, the facts alleged in the complaint will be accepted as true.  In September 2006, Bailey was a Vermont inmate incarcerated at the North Fork Correctional Facility ("NFCF") in Sayre, Oklahoma.  NFCF is owned and operated by Corrections Corporation of America ("CCA"), a private corporation headquartered in Tennessee.  CCA houses Vermont prisoners pursuant to a contract with the Vermont Department of Corrections ("DOC").

At that time, Bailey had a job in the prison's medical unit.  While at work, he made a verbal request to defendants Alicia Cox, a medical unit nurse, and Michelle Cogburn, the medical unit nurse manager, to arrange for him to see a dentist.  Shortly thereafter, Bailey was fired from his job in the medical unit.

As of October 1, 2006, Bailey had not yet seen the dentist.  He filed a formal sick call request stating that he "needed to be seen by the dentist to fix a broken tooth."  That same day, Cogburn informed Bailey that he was "on the list for dental."

On November 1, 2006, Bailey filed an informal grievance

2

for denial of access to the dentist.  He received no response to his filing.  On December 8, 2006, he filed another formal sick call request.  Three days later, he received a response from defendant M. Brisco stating that he was "on the list to see the dentist."

By February 18, 2007, Bailey still had not been seen by a dentist.  He filed yet another sick call request, and was again informed, this time by defendant C. Harris, that he was on the list.  Bailey contends that Cox, Cogburn, Brisco and Harris were all aware of his suffering, and that they "maliciously and sadistically chose to ignore the plaintiff's pain and suffering, and allowed it to continue."

On March 20, 2007, Bailey filed a formal grievance complaining about the delay in his dental care.  On March 26, 2007, defendant Sandy Glenn denied the grievance and crossed out the appeal section on the form, thereby allegedly "terminating the grievance process and denying the plaintiff his due process."

On March 30, 2007, Bailey was seen by a dentist.  The dentist repaired his fractured tooth with temporary filling gum.  The temporary repair lasted only two days.  When the filling fell out, Bailey again suffered from pain and

3

swelling.  He immediately filed a sick call slip, but as of
May 1, 2007, the date on which he signed his complaint,
Bailey had not yet received a response to his sick call
request.

Discussion

I.  Motion to Amend

The Court will first address Bailey's amended
complaint.  Although Bailey's filing has been docketed as a
motion to amend, he may amend his complaint as a matter of
course as long as he has not been served with a responsive
pleading.  Fed. R. Civ. P. 15(a)(1).  The defendants have
not yet answered the complaint, and a motion to dismiss is
not a responsive pleading.  See Burns v. Trombly, 2008 WL
2003804, at *6 n.29 (N.D.N.Y. May 7, 2008) (citing
Washington v. James, 782 F.2d 1134, 1138-39 (2d Cir. 1986)).
Accordingly, the Court will treat the opposition to the
motion to amend as a motion to dismiss, and determine
whether Bailey's claims against the newly-added Vermont
defendants have any plausible merit.[1]

The amended complaint adds two defendants: Vermont DOC
Commissioner Robert Hofmann and DOC Supplemental Housing

---

[1]  The Court has a duty to screen Bailey's claims under 28 U.S.C. § 1915A.

4

Unit Officer Kevin Oddy.  To the extent that these defendants are sued in their officials capacities, any claims against them for damages are barred by the Eleventh Amendment.  The Eleventh Amendment prohibits suits in federal court by citizens against a state and its agencies, absent a waiver of immunity and consent to suit by the state or a valid abrogation of constitutional immunity by Congress.  See, e.g., Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 142-47 (1993); Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 97-100 (1984).  The Eleventh Amendment also bars claims against state employees sued in their official capacities.  See Hafer v. Melo, 502 U.S. 21, 25 (1991); Pennhurst, 465 U.S. at 102.

Relevant to this case, there has been no waiver of Vermont's sovereign immunity and no abrogation of that immunity by Congress.  Indeed, the Vermont legislature has specifically preserved the State's immunity under the Eleventh Amendment.  See 12 V.S.A. § 5601(g).  Accordingly, any claim for damages against Hofmann and Oddy in their official capacities should be DISMISSED.

Bailey is also asking for declaratory and injunctive

relief.  Since filing his complaint, he has been transferred to a different prison facility.  Consequently, injunctive relief with respect to his care at NFCF is no longer available, and his claims for declaratory and injunctive relief are moot.  See Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006); Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996).

With respect to Bailey's claims against Hofmann and Oddy in their individual capacities, he submits that these defendants were aware of the problems with his medical treatment.  As to Commissioner Hofmann, the claim is that he "had knowledge of the plaintiff's medical treatment," and was aware of mistreatment of Vermont inmates generally. Bailey does not specify the manner in which Hofmann was notified of his situation.

The claims against Oddy are somewhat more specific, alleging that Oddy met with Bailey personally during on-site visits in Oklahoma, reviewed grievances, and communicated with Bailey's out-of-state caseworker.  Bailey also alleges that both Hofmann and Oddy were aware of general mistreatment of Vermonters incarcerated at NFCF.

It is plain from Bailey's allegations that Hofmann and

Oddy were not personally involved in the alleged
deprivations of dental care.  Consequently, they may only be
held liable in their respective roles as supervisors.  The
Second Circuit has established that, for a supervisory
defendant to be held liable under § 1983, the claim cannot
rest on respondeat superior.

> '[S]upervisor liability in a § 1983 action depends
> on a showing of some personal responsibility, and
> cannot rest on respondeat superior.'  Hernandez v.
> Keane, 341 F.3d 137, 144 (2d Cir. 2003) (citing
> Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060,
> 1065 (2d Cir. 1989)).  To establish the liability
> of a supervisory official under § 1983, a
> plaintiff must show the defendant's personal
> involvement in the alleged constitutional
> violations.  See Green v. Bauvi, 46 F.3d 189, 194
> (2d Cir. 1995).  By the same token, however, mere
> 'linkage in the prison chain of command' is
> insufficient to implicate a state commissioner of
> corrections or a prison superintendent in a § 1983
> claim.  Ayers v. Coughlin, 780 F.2d 205, 210 (2d
> Cir. 1985); see also Wright v. Smith, 21 F.3d 496,
> 501 (2d Cir. 1994) (noting that a defendant in a §
> 1983 action may not be held liable for
> constitutional violations merely because he held a
> high position of authority).

> Supervisor liability under § 1983 "can be shown in
> one or more of the following ways: (1) actual
> direct participation in the constitutional
> violation, (2) failure to remedy a wrong after
> being informed through a report or appeal, (3)
> creation of a policy or custom that sanctioned
> conduct amounting to a constitutional violation,
> or allowing such a policy or custom to continue,
> (4) grossly negligent supervision of subordinates
> who committed a violation, or (5) failure to act
> on information indicating that unconstitutional

acts were occurring." <u>Hernandez</u>, 341 F.3d at 145;
<u>see</u> <u>also</u> <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d
Cir. 1995).

<u>Richardson v. Goord</u>, 347 F.3d 431, 435 (2d Cir. 2003).

Again, there are no allegations of direct participation
by either Hofmann or Oddy.  Although Bailey claims to have
filed grievances, and assuming that both Hofmann and Oddy
received copies of those grievances, courts in this circuit
have uniformly held that a supervisor's receipt of a letter
or grievance will not establish personal involvement.  <u>See</u>
<u>Woods v. Goord</u>, 2002 WL 731691, at *1 (S.D.N.Y. Apr. 23,
2003) (collecting cases).  As one court noted, "if mere
receipt of a letter or similar complaint were enough,
without more, to constitute personal involvement, it would
result in liability merely for being a supervisor, which is
contrary to the black-letter law that § 1983 does not impose
respondeat superior liability."  <u>Walker v. Pataro</u>, 2002 WL
664040, at *12 (S.D.N.Y. Apr. 23, 2002).

Additionally, there is no indication that either
Hofmann or Oddy were responsible for a policy or custom that
led to wrongdoing, or that they may be held liable for
failing to properly supervise CCA employees who committed

allegedly wrongful acts.[2]  The primary claim in this case is that while imprisoned in Oklahoma, CCA employees denied Bailey access to adequate dental care.  Given § 1983's requirement of personal involvement, the facts alleged in the amended complaint cannot result in liability against supervisors in the Vermont DOC.  The claims against defendants Hofmann and Oddy in their individual capacities should, therefore, be dismissed.[3]

II.  <u>Motion to Dismiss for Improper Venue</u>

The defendants argue that, with respect to the remaining defendants, venue in Vermont is improper.  When a case is commenced in an improper venue, Section 1406(a) requires the Court to either dismiss it or, "if it be in the interest of justice," transfer the case to a district in which it could have been brought.  28 U.S.C. § 1406(a).  "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court."  <u>Minnette v. Time Warner</u>, 997 F.2d 1023, 1026 (2d Cir. 1993).  "On a Rule 12(b)(3) motion to dismiss based on improper venue, the burden of showing that venue in the forum is proper falls on

---

[2]  Indeed, there is no suggestion in the amended complaint that either of these DOC officials had any sort of control over the actions of CCA employees.

[3] For administrative purposes, because the amended complaint was docketed as a motion, I recommend that the motion to amend (Paper 25) be DENIED.

the plaintiff." Indymac Mortgage Holdings, Inc. v. Reyad,

167 F. Supp. 2d 222, 237 (D. Conn. 2001).

In cases involving questions of federal law, such as

civil rights claims under § 1983, venue lies in

> (1) a judicial district where any defendant
> resides, if all defendants reside in the same
> State, (2) a judicial district in which a
> substantial part of the events or omissions giving
> rise to the claim occurred, or a substantial part
> of property that is the subject of the action is
> situated, or (3) a judicial district in which any
> defendant may be found, if there is no district in
> which the action may otherwise be brought.

28 U.S.C. § 1391(b); see also Amaker v. Haponik, 198 F.R.D.

386, 391 (S.D.N.Y. 2000). Bailey also claims diversity

jurisdiction, for which the controlling statute is 28 U.S.C.

§ 1391(a). Section 1391(a) provides that venue lies in

> (1) a judicial district where any defendant
> resides, if all defendants reside in the same
> State, (2) a judicial district in which a
> substantial part of the events or omissions giving
> rise to the claim occurred, or a substantial part
> of property that is the subject of the action is
> situated, or (3) a judicial district in which any
> defendant is subject to personal jurisdiction at
> the time the action is commenced, if there is no
> district in which the action may otherwise be
> brought.

28 U.S.C. § 1391(a).

Subsection (1) of either § 1391(a) or § 1391(b) does

not apply here, since the defendants do not all reside in

the same district.  Although the primary actors in the case presumably reside in Oklahoma, the complaint alleges that CCA is headquartered in Tennessee.  The next subsection of each statute determines venue based upon where "a substantial part of the events or omissions giving rise to the events occurred . . . ."  28 U.S.C. § 1391(a)(2), (b)(2).  The Second Circuit has instructed lower courts to "take seriously the adjective 'substantial'" in construing "the venue statute strictly."  Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 356 (2d Cir. 2005).

In this case, the principal events took place at the correctional facility in Oklahoma.  Accordingly, venue is most appropriate in that state under subsection (2).  See Lee v. Corrections Corp. of America, 2007 WL 4225405, at *2-*3 (D. Hawaii Nov. 26, 2007); Basargin v. Corrections Corp. of America, 2005 WL 2705002, at *2 (D. Alaska Oct. 17, 2005); Sadler v. Rowland, 2004 WL 2061127, at *5 (D. Conn. Sept. 13, 2004) (action brought by Connecticut prisoner against prison personnel in Virginia transferred to Virginia).  Because this action could have been brought in Oklahoma, subsection (3) of both §§ 1391(a) and (b) is inapplicable.  See Wright, Miller & Cooper, Federal Practice

& Procedure: Jurisdiction 2d § 3802.1 n. 26 (Supp. 2003)
(citing F.S. Photo, Inc. v. Picturevision, Inc., 48 F. Supp.
2d 442, 448 (D. Del. 1999)).

Having determined that venue is most appropriate in
Oklahoma, the Court must decide whether the case should be
dismissed, or whether the interests of justice call for a
transfer. "Courts enjoy considerable discretion in deciding
whether to transfer a case in the interest of justice."
Daniel v. American Bd. of Emergency Medicine, 428 F.3d 408,
435 (2d Cir. 2005) (citation omitted). In making this
determination, consideration should be given to the ultimate
goal of the "expeditious and orderly adjudication of cases
and controversies on their merits." Goldlawr, Inc. v.
Heinman, 369 U.S. 463, 466-67 (1962).

Bailey commenced this action several months ago.
Because of his *in forma pauperis* status, service has been
initiated by the U.S. Marshals Service. To dismiss the case
and require re-filing in Oklahoma would result in
unnecessary duplication of effort on the part of the
government, additional effort for the plaintiff, added
expense for the defendants, and unnecessary delay for all
parties. I therefore recommend that, in the interest of

12

justice, the case be TRANSFERRED to Oklahoma.

## Conclusion

For the reasons set forth above, I recommend that the motion to amend the complaint (Paper 27)be DENIED, and that the defendants' motion to dismiss (Paper 25) be GRANTED to the extent that the case should be TRANSFERRED to the United States District Court for the Western District of Oklahoma pursuant to 28 U.S.C. § 1406.

Dated at Burlington, in the District of Vermont, this 11th day of June, 2008.


/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge


Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).