IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENNETH BAILEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | )   CIV-08-1003-HE |
| v. | ) |
| | ) |
| MICHELLE COGBURN, et al., | ) |
| | ) |
| Defendants. | ) |

REPORT AND RECOMMENDATION

Plaintiff, a Vermont state prisoner appearing *pro se* and *in forma pauperis*, brings this civil rights action pursuant to 42 U.S.C. §1983 seeking damages and equitable relief for alleged constitutional and statutory violations occurring during his confinement at the North Fork Correctional Facility, a private prison in Oklahoma. The action was originally filed by Plaintiff on May 8, 2007, in the United States District Court for the District of Vermont and transferred to this Court on July 9, 2008, at the direction of United States District Judge Garvan Murtha. Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56, to which Plaintiff has responded. Defendants have also caused the filing of a special report consistent with Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978), and the Order Requiring Special Report. (Doc. # 37). The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). For the following reasons, it is recommended that Defendants' Motion for Summary Judgment be

1

granted.

I. <u>Standard of Review</u>

Summary judgment may be granted only where the pleadings and documentary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party. <u>Jiron v. City of Lakewood</u>, 392 F.3d 410, 414 (10th Cir. 2004). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." <u>Id</u>. Additionally, if the moving party demonstrates an absence of evidence regarding an issue on which the nonmoving party will bear the burden of proof at trial, the nonmoving party can defeat summary judgment only by designating with evidence outside of the pleadings "specific facts showing that there is a genuine issue for trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

II. <u>Plaintiff's Claims</u>

In Plaintiff's Complaint, Plaintiff alleges that Defendants are liable to him for violations of the Eighth Amendment's cruel and unusual punishment clause, the Constitution of the State of Vermont, Vermont statutes, and "under the common law torts of medical negligence and negligence per se ...." (Doc. # 7). At the time the Complaint was filed, Plaintiff was an inmate committed to the custody of the Vermont Department of Corrections

and confined to the North Fork Correctional Facility ("NFCF") pursuant to a contract between the Vermont Department of Corrections and NFCF to house Vermont inmates. NFCF is owned and operated by Corrections Corporation of America, Inc. ("CCA"). The Defendants named in the Complaint are Ms. Cogburn, who is described in the Complaint as a registered nurse and nurse administrator at NFCF, Ms. Cox, who is described as a registered nurse at NFCF, Ms. Briscoe, who is described as a licensed practical nurse at NFCF, "C. Harris," who is described as a licensed practical nurse at NFCF, and CCA.

In his Complaint, Plaintiff alleges that sometime in September 2006, while he was working in the prison's medical unit, he verbally requested that Defendants Cox and Cogburn "arrange an appointment for him with the dentist" at NFCF. He alleges that "[s]hortly thereafter" he was fired from his job in the medical unit. He alleges that he submitted a written request for medical treatment on October 3, 2006, seeking dental treatment for a "broken tooth" and that Defendant Cogburn responded the same day advising Plaintiff he had been placed on a list for dental treatment. Plaintiff alleges that he filed an informal grievance concerning the denial of access to the dentist on November 1, 2006, but received no response.

Plaintiff alleges that he submitted a written request for medical treatment on December 8, 2006, and that three days later Defendant Briscoe responded again advising him he had been placed on a list to see the dentist. Plaintiff asserts that he filed another informal grievance concerning the denial of dental treatment, but he received no response. Plaintiff alleges that on February 18, 2007, he submitted another written request for medical treatment

for his "problem" that had been "ongoing for six months." and that he received a response from Defendant Harris on February 20, 2007, advising him that he was "still on the list to see the dentist." Plaintiff alleges that he filed an informal grievance concerning the denial of dental treatment, but he received no response. Plaintiff alleges that Defendants Cogburn, Brisco, and Harris "consciously, maliciously, and sadistically chose to ignore the plaintiff's pain and suffering...."

Plaintiff contends that on March 20, 2007, he submitted a formal grievance with NFCF "for delay and denial of access to dental care." Plaintiff asserts that on March 26, 2007, Defendant Glenn denied Plaintiff's grievance without addressing the issue raised in the grievance and "crossed out the appeal section of the grievance form, terminating the grievance procedure and denying the plaintiff his due process." Plaintiff alleges that on March 30, 2007, "after 7 full months, [he] finally saw the facility dentist," that his "fractured tooth was repaired with temporary filling gum," and this temporary repair "lasted two days, then fell out, leaving the plaintiff back in pain." Plaintiff contends he submitted a request for medical treatment on April 2, 2007, and that he received no response to this request. He contends that Defendant Cox "was responsible for scheduling medical and dental appointments for the inmate population" and that she "either declined to schedule me or continuously moved me down the list to deny me dental care."

III. Uncontroverted Facts

It is uncontroverted that Plaintiff is an inmate in the custody of the Vermont Department of Corrections and that Plaintiff was incarcerated at NFCF, a private prison

owned and operated by CCA, from March 2006 until September 1, 2007, when he was transferred to a Kentucky correctional facility, Lee Adjustment Center. During the alleged events that form the basis for Plaintiff's cause of action, NFCF employed one or more dentists who saw inmates at the facility on a weekly or biweekly basis. Pursuant to CCA policy, when an inmate at NFCF requested dental treatment the inmate's request was "triaged and placed in line based upon severity of the dental condition," with "emergency" requests given first priority, "urgent" requests given second priority, and "routine" requests given third priority.[1] During the time Plaintiff was incarcerated at NFCF, the routine dental needs of inmates sometimes took several months to resolve.[2]

Plaintiff submitted a written request for medical treatment on June 1, 2006, requesting to be seen by the dentist to "fix 2-3 broken teeth that hurt when eating, drinking etc." Plaintiff was treated on June 9, 2006, by Dr. Malcolm, a dentist. The record of this treatment reflects that Plaintiff's teeth numbered 17 and 18 were broken, that tooth number 17 was

---

[1] Although in Plaintiff's responsive pleading Plaintiff "disputes" this statement set forth in Defendants' Statement of Uncontroverted Facts, Defendants have provided supporting evidentiary documents, including affidavits and medical records, to support the statement. Plaintiff was advised of his obligations in responding to Defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(e) and LCvR 56.1(c). However, in his response to Defendants' Motion, Plaintiff merely concludes that this statement is "disputed" without benefit of supporting evidentiary materials. Therefore, the material facts as set forth in Defendants' Statement of Uncontroverted Facts are not disputed. Fed. R. Civ. P. 56(e)(2).

[2] See supra footnote 1.

restored with a resin bond, and that a crown for Plaintiff's tooth number 18 was ordered.[3]

Plaintiff submitted a written request for medical treatment on July 9, 2006, in which he stated he needed to be treated by the "facility dentist to finish repairing other broken tooth on bottom right side of mouth." On July 13, 2006, the prison's medical staff responded to Plaintiff's request by advising him that he had been placed on the list to be seen by the dentist.[4] Plaintiff was treated by Dr. Malcolm on August 4, 2006. The record of this treatment reflects that Plaintiff presented with a complaint of a cavity on his tooth number 29 and complaining that his tooth number 29 was cutting his lip. The record reflects that Dr. Malcolm restored Plaintiff's tooth number 29.

Plaintiff submitted a written request for medical treatment on October 2, 2006, in which he requested to be seen by a dentist "to fix broken tooth." On October 3, 2006, Plaintiff was advised by Defendant Cogburn that he had been placed on the list to be seen by the dentist.[5] Plaintiff submitted a written request for medical treatment on December 8, 2006, requesting to see the dentist "to fix my broken tooth, still not done." On December 11, 2006, Defendant Briscoe responded to Plaintiff's request by advising him that he was on the

---

[3]Although Defendants state that it is uncontroverted a crown was placed on Plaintiff's tooth number 18 during this treatment visit, Defendants rely on the actual dental record of treatment prepared by Dr. Malcom dated June 9, 2006, to support this statement. This treatment note reflects only that a crown was ordered for this tooth. Defendants' Motion for Summary Judgment and Brief in Support, Ex. 3, at 2.

[4]See *supra* footnote 1.

[5]See *supra* footnote 1.

6

list to be seen by the dentist."[6]

On February 18, 2007, Plaintiff submitted a written request for medical treatment in which he stated that his teeth were "broken, bleeding, and hurt," and he wanted to see the dentist. Plaintiff was advised by medical personnel that he was "still on the list to see [the] dentist." Plaintiff was examined by Dr. Malcolm on March 23, 2007. The record of this treatment reflects that Plaintiff complained that his teeth numbered 15 and 18 were sensitive and that tooth number 31 was sharp against his tongue. The record reflects that Plaintiff's tooth number 31 was re-contoured and that a bonding agent was applied to his teeth numbered 15 and 18.[7] Dr. Malcolm did not note in his records of dental treatment of Plaintiff that Plaintiff was suffering from broken, bleeding, hurting teeth, or any other severe dental issues.[8] Dr. Malcolm did not note that Plaintiff needed additional dental treatment.

Plaintiff submitted a written request for medical treatment on June 16, 2007, in which he stated he had a "[b]roken tooth on bottom left still very sore." Plaintiff was again seen by a facility dentist, Dr. Akberali, on July 19, 2007. However, Plaintiff was not able to sit in the dental chair because of problems with his back. Dr. Akberali noted a diagnostic assessment of "caries," or cavity, and indicated Plaintiff would return for x-rays and treatment when the x-ray machine was working.

On August 16, 2007, Plaintiff submitted a written request for medical treatment

---

[6]See *supra* footnote 1.

[7]See *supra* footnote 1.

[8]See *supra* footnote 1.

indicating his back was well enough to sit in the dental chair and was ready to be seen by the dentist. The prison's medical staff responded on August 21, 2007, that Plaintiff would be notified of his appointment time. Plaintiff was transferred by the Vermont Department of Corrections from NFCF to another CCA-owned private prison, the Lee Adjustment Center, in Beattyville, Kentucky, on September 1, 2007.[9]

Plaintiff submitted a sick call request at the Lee Adjustment Center on September 1, 2007, in which he requested to see a dentist for teeth cleaning and to repair his teeth with fillings. A dental assistant at that facility examined Plaintiff on September 25, 2007. Defendants assert as an undisputed statement of fact that in this examination the dental assistant found Plaintiff's tooth number 18 was restorable, Plaintiff was placed on a list for a filling, and Plaintiff was assessed as dental priority 3, which is defined by CCA policy as "routine." Defendants have provided the record of this treatment of Plaintiff completed by the Lee Adjustment Center medical professional in support of their statement of uncontroverted facts. Plaintiff has, however, attached an affidavit to his responsive pleading in which he avers that "[w]hen I arrived at the [Lee Adjustment Center] in September 2008, I requested to see the dentist. I explained the problem with tooth # 18 and was informed that at that point in time, the tooth had decayed beyond repair and needed to be pulled." Plaintiff's Response, Ex. 1. This verified affidavit directly contradicts the Defendants' statement of uncontroverted facts and the record of this treatment provided by Defendants

---

[9]See http://www.correctionscorp.com/facilities/?state=KY

as an exhibit in support of their Motion for Summary Judgment. Thus, there is a dispute about the dental diagnosis made with respect to Plaintiff's tooth number 18 after he left NFCF. This dispute is not material, however, to the resolution of Defendants' Motion.

IV. <u>Claims of Violations of State Laws and State Constitution</u>

"In order to state a § 1983 claim, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and the plaintiff must show that the alleged deprivation was committed by a person acting under color of state law." <u>Bruner v. Baker</u>, 506 F.3d 1021, 1025-1026 (10th Cir. 2007)(quotation omitted). To the extent Plaintiff seeks relief for Defendants' alleged violations of Vermont state laws or for alleged violations of the Vermont Constitution, these claims are not cognizable in this 42 U.S.C. § 1983 action. See <u>Eidson v. Owens</u>, 515 F.3d 1139, 1148 (10th Cir. 2008); <u>Jones v. City and County of Denver.</u>, 854 F.2d 1206, 1209 (10th Cir. 1988)("Section 1983 does not ... provide a basis for redressing violations of state law, but only for those violations of *federal* law done under color of state law.")(emphasis in original). Accordingly, the Plaintiff's claims for alleged violations of Vermont state laws or the Vermont Constitution should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

V. <u>Exhaustion of Administrative Remedies</u>

Defendants contend that Plaintiff failed to exhaust available administrative remedies at NFCF and therefore Defendants are entitled to summary judgment on this basis.

The Prison Litigation Reform Act of 1995 ("PLRA"), enacted in 1996, directs that: "No action shall be brought with respect to prison conditions under section 1983 of this title,

or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision has been interpreted by the Supreme Court to apply "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, exhaustion of administrative remedies under the PLRA is required for all inmates seeking relief in federal district court regardless of the type of relief available under the institutional administrative procedure. Booth v. Churner, 532 U.S. 731, 741 (2001). The PLRA's administrative exhaustion requirement is satisfied if the inmate complies with the prison's grievance procedures. Jones v. Bock, 549 U.S. 199, 218 (2007).

Defendants seek summary judgment with respect to Plaintiff's claims under 42 U.S.C. § 1983 for violating his constitutional rights due to Plaintiff's failure to exhaust his administrative remedies. Plaintiff contends in his Complaint that he attempted to exhaust his administrative remedies by submitting a grievance to Defendant Glenn, the NFCF grievance coordinator, but that Defendant Glenn refused to review the merits of the grievance and thereby denied Plaintiff access to the grievance appeal process "which would normally be taken to the facility warden for a final decision." Complaint, at 9. Thus, Plaintiff contends that he should be deemed to have exhausted his administrative remedies.

The undisputed facts show that Plaintiff presented a grievance to Defendant Glenn in which he asserted that he had requested dental treatment but had not seen a dentist. In response to this grievance, Plaintiff was advised by Defendant Glenn that the grievance was

being denied because Plaintiff had an excessive number of pending grievances, in contravention of NFCF policy. Defendants have submitted a copy of the grievance procedures at NFCF in support of their Motion for Summary Judgment on this issue. Defendants' Motion, Ex. 4.  Plaintiff admits that he did not exhaust his administrative remedies but asserts that the restrictions placed on his use of the NFCF grievance procedure rendered the administrative remedies unavailable.  The NFCF policy concerning inmate grievances reflects that inmates are limited to two pending non-emergency grievances at a time and that if an inmate files a grievance when he or she has more than two other pending grievances, "it will be logged and held by the Facility Grievance Officer until one of the previously submitted grievances has been completed." Defendants' Motion, Ex. 4, at 3. There is no provision in this policy for a grievance coordinator to simply dismiss a grievance because the inmate had an excessive number of pending grievances. However, Plaintiff has not shown that he filed a grievance concerning Defendant Glenn's failure to comply with NFCF grievance policy.  Nevertheless, because a reasonable jury could find that Defendant Glenn's refusal to review the merits of Plaintiff's grievance after his other pending grievances were resolved prevented Plaintiff from completing the administrative grievance procedure, Defendants' Motion for Summary Judgment with respect to Plaintiff's exhaustion of administrative remedies should be denied.

VI. Eighth Amendment Deliberate Indifference to Serious Medical Needs

Plaintiff's claim that Defendants have violated his rights under the Eighth Amendment of the Constitution is governed by the Supreme Court's decision in Farmer v. Brennan, 511

11

U.S. 825 (1994). In Farmer, the court reiterated the Court's long-standing rule that a "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Id. at 828. Because prisoners have been "stripped ... of virtually every means of self-protection and ... their access to outside aid [has been foreclosed]," the Court reasoned that "the government and its officials are not free to let the state of nature take its course." Id. at 833.

With respect to the issue of medical care, the Eighth Amendment is violated if prison officials show "deliberate indifference to an inmate's serious medical needs." Mata v. Saiz 427 F.3d 745, 751 (10th Cir. 2005). In explaining the term "deliberate indifference" the Supreme Court has recognized that "something more than mere negligence" is required to show deliberate indifference but that it is not necessary to show purposeful or knowing conduct. Farmer, 511 U.S. at 835-836. This standard is violated if the prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." Self v. Crum, 439 F.3d 1227, 1231 (10th Cir.)(quoting Farmer, 511 U.S. at 837), cert. denied, 549 U.S. 856 (2006). A plaintiff claiming that prison officials have been deliberately indifferent to the prisoner's medical needs must prove two elements. The prisoner must show that, objectively, the inmate's medical needs were "sufficiently serious," and, subjectively, the prison official acted with a "sufficiently culpable state of mind" such that the official knew of and disregarded an excessive risk to inmate health or safety Id. at 1230-1231; see also Mata, 427 F.3d at 751.

A medical need is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000)(internal quotation omitted).

Plaintiff has alleged that Defendants Cogburn, Cox, Briscoe, Glenn, and Harris showed deliberate indifference to his serious medical needs by delaying or denying his access to a dentist who could treat his dental problems. An inmate who alleges that mistakes in diagnoses or delayed medical treatment violated the inmate's Eighth Amendment rights must show

> (1) a medical professional recognizes an inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise but nevertheless declines or unnecessarily delays referral, *e.g.*, a family doctor knows that the patient needs delicate hand surgery requiring a specialist but instead of issuing the referral performs the operation himself; (2) a medical professional fails to treat a medical condition so obvious that even a layman would recognize the condition, *e.g.*, a gangrenous hand or a serious laceration; [or] (3) a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency, *e.g.*, a patient complains of chest pains and the prison official, knowing that medical protocol requires referral or minimal diagnostic testing to confirm the symptoms, sends the inmate back to his cell.

Self, 439 F.3d at 1232 (citations omitted). In this case, Plaintiff contends that as a result of Defendants' delay in providing him with access to dental care, specifically a crown for his

broken tooth number 18,[10] he suffered pain and the deterioration of the tooth. "Prisoners generally have more extensive dental problems than the average citizen. Consequently dental care is one of the most important medical needs of inmates." Ramos v. Lamm, 639 F.2d 559, 576 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981). "A cognizable claim regarding inadequate dental care, like one involving medical care, can be based on various factors, such as the pain suffered by the plaintiff, the deterioration of the teeth due to a lack of treatment, or the inability to engage in normal activities." Chance v. Armstrong, 143 F.3d 698, 703 (2nd Cir. 1998).

There is no dispute that during his seventeen months of confinement at NFCF Plaintiff submitted seven requests for dental treatment and that he was seen by a dentist at the facility on four occasions. Plaintiff has not sued the dentists who treated him at NFCF. Rather, Plaintiff has sued the three health professionals at NFCF, Defendants Cogburn, Cox, and Briscoe, who responded to his written requests for medical treatment pursuant to NFCF policy and scheduled his appointments with the dentists providing dental care for NFCF inmates. "A prison medical professional who serves 'solely ... as a gatekeeper for other medical personnel capable of treating the condition' may be held liable under the deliberate

---

[10] In his Complaint, Plaintiff describes this tooth as a "lower left molar that had fractured and was bleeding and painful" and that was causing him to have swollen gums and "difficulty chewing and eating." Complaint, at 10. In response to Defendants' Motion for Summary Judgment, Plaintiff more specifically describes this as "tooth # 18" which he alleges was "decayed, partially broken," and causing "intermittent periods of pain, swelling, and bleeding." Plaintiff's Response, at 3. Plaintiff asserts in his responsive pleading that a crown was ordered for this tooth by Dr. Malcolm, the facility's dentist but it was never installed on the tooth, and that if the tooth had "been capped with a crown as ordered in June 2006, the decay would have been stopped and the tooth saved." Id. at 3-4.

indifference standard if she 'delays or refuses to fulfill the gatekeeper role.'" Mata, 427 F.3d 745, 751 (quoting Sealock, 218 F.3d at 1211).

     First, Plaintiff has not demonstrated that his dental need was sufficiently serious to implicate the Eighth Amendment. Plaintiff contends that he had a broken tooth. He does not allege that the tooth was infected, abscessed, or required immediate attention at any time during Plaintiff's confinement at NFCF. Nevertheless, even assuming that Plaintiff has satisfied the objective requirement of showing a serious medical need, the material, undisputed facts in this case provide no inference from which a reasonable jury could find that Defendants Cogburn, Cox, Briscoe, or Glenn knew about and disregarded a substantial risk of harm to Plaintiff's need for dental treatment. None of these Defendants deliberately denied Plaintiff access to a dentist. Rather, the undisputed facts reflect that in response to Plaintiff's requests for dental treatment Defendants Cogburn, Cox, and Briscoe placed Plaintiff on a list to be seen by a dentist and that Plaintiff was examined and treated by a dentist four times over a 17-month period. In each instance, the dentist took measures to treat the various teeth that Plaintiff complained were causing him problems. Although the record shows a crown was ordered by a dentist in June 2006 for Plaintiff's tooth # 18 and the record does not show that the crown was ever installed on Plaintiff's tooth, there is no evidence in the record that any Defendant knew the dentist had ordered a crown for Plaintiff's tooth or that the failure to install the crown was causing Plaintiff significant pain or bleeding or other adverse health effects. In Plaintiff's requests for dental treatment, Plaintiff stated only twice, once in June 2006 and once in February 2007, that his teeth were

causing him pain, and he was treated by a dentist in June 2006 and in March 2007 in response to these requests for treatment. Plaintiff vaguely asserts in his Complaint that Defendants Cogburn, Cox, and Briscoe were "personally aware of the plaintiff's pain, swelling, discomfort, and difficulty eating," but the undisputed facts show that in each instance in which Plaintiff requested dental treatment these Defendants took steps to provide Plaintiff with access to a dentist and that Plaintiff was treated by a dentist at NFCF multiple times. The dentists who treated Plaintiff did not indicate in their treatment notes that Plaintiff complained of or exhibited dental problems serious enough to cause him persistent pain, swelling, discomfort, or difficulty eating. The undisputed facts reflect that a bonding agent was applied to tooth # 18 in March 2007, indicating that the tooth's condition had not markedly worsened. When Plaintiff again sought dental treatment for the "broken tooth" which he stated was "sore," the dentist noted that an x-ray machine needed to x-ray Plaintiff's teeth was broken and that Plaintiff had a physical problem that would not allow him to sit in the dental chair. Plaintiff attached two grievance forms to his Complaint, one dated December 29, 2006, and another dated February 27, 2007, in which he supposedly complained of being denied access to dental treatment. However, there is nothing in the record showing that any Defendant received or was notified of these informal grievances.

Plaintiff's only allegation against Defendant Glenn is that this Defendant refused to consider the merits of Plaintiff's grievance about dental treatment because he had violated CCA policy by filing too many grievances in one month. The record shows that Plaintiff submitted a grievance dated March 20, 2007, in which he stated he had requested dental

treatment in October and December 2006 and in February 2007 and had not seen a dentist. He requested only that Defendants Cogburn and Cox be reprimanded or be removed for failure to schedule his appointments sooner. Plaintiff's Complaint, att. 1. In response to this grievance, Defendant Glenn advised Plaintiff in writing that the grievance was denied because Plaintiff had filed seven grievances and he was only allowed to have two grievances pending at a time. Nowhere in this grievance did Plaintiff allege that he was in urgent need of dental care because of significant pain, infection, or other adverse symptoms sufficient to put Defendant Glenn on notice of the existence of a substantial risk of harm to Plaintiff's health. There is no evidence from which a reasonable jury could find that Defendants Cogburn, Cox, Briscoe, or Glenn were deliberately indifferent to Plaintiff's serious medical needs. Accordingly, Defendants' Motion for Summary Judgment concerning Plaintiff's Eighth Amendment claim should be granted.

VII. Supervisory Liability Claim against Defendant CCA

Plaintiff seeks to hold Defendant CCA[11] liable under 42 U.S.C. § 1983 for violations of his constitutional rights. Defendant CCA cannot be liable solely for the actions of its employees, however. Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978). CCA may be liable to Plaintiff under 42 U.S.C. § 1983 only if its own action pursuant to a policy or custom adopted by a final decisionmaker for CCA caused a constitutional tort. Pembaur v.

---

[11] Defendant CCA does not dispute that it acted under color of state law and that its actions are "fairly attributable to the State." Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982).

Cincinnati, 457 U.S. 469, 482-483 (1986).  Plaintiff has not alleged that any conduct that allegedly violated his constitutional rights was taken by a policymaker for CCA or that any specific policy, custom, or practice adopted by a CCA decisionmaker resulted in the alleged harm, namely the denial of or delay in providing him dental treatment.  Thus, a reasonable jury would not find in favor of Plaintiff on his claims against Defendant CCA, and Defendant CCA is entitled to summary judgment with respect to Plaintiff's claims against it.

VIII. Pendent State Tort Claims

Pursuant to 28 U.S.C. § 1367(c)(3), a district court has the discretion to decline to exercise supplemental jurisdiction over remaining state-law claims. "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998)(citing 28 U.S.C. § 1367(c)(3) and Ball v. Renner, 54 F.3d 664, 669 (10th Cir. 1995)).  Accordingly, the Court should decline to exercise pendent jurisdiction over Plaintiff's state-law negligence claims.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that Plaintiff's claims for violations of Vermont state law or the Vermont Constitution should be DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim for relief, that Defendants' Motion for Summary Judgment on the basis of Plaintiff's failure to exhaust administrative remedies should be DENIED, and that Defendants' Motion for Summary Judgment with respect to Plaintiff's claims for violations of his federal constitutional rights

should be GRANTED and that judgment should enter in favor of Defendants and against the Plaintiff. The Court should further decline to exercise pendent jurisdiction over Plaintiff's state tort claims pursuant to 28 U.S.C. § 1367(c)(3). The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by __March 2nd__, 2009, in accordance with 28 U.S.C. § 636 and LCvR 72.1. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991); <u>cf.</u> <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this __9th__ day of __February__, 2009.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE